# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**LESLIE RAY TURNER,**
    **Petitioner,**

-vs-                     **Case No. A-08-CA-811-SS**

**RICK THALER,**[1]
    **Respondent.**

## O R D E R

  BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Leslie Ray Turner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [#1], and the Report and Recommendation of the Magistrate Judge [#12]. For the reasons set forth below, the undersigned finds Turner's Petition for Writ of Habeas Corpus should be DENIED.

  All matters in this case were referred to the Honorable Andrew Austin, United States Magistrate Judge, for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective December 1, 2002. On August 3, 2009, the Magistrate Judge issued his report and recommendation that Turner's claims should be denied. Turner did not file written objections to the Magistrate Judge's report and recommendation, and thus the Court is not required to review the report and recommendation *de novo*. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo

---

[1] The previous named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Quarterman as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Thaler is automatically substituted as a party.

determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Nevertheless, having reviewed the above-listed documents, the applicable law, and the case file as a whole, the Court ACCEPTS the Magistrate Judge's report and recommendation and DENIES Turner's Petition for Writ of Habeas Corpus.

## Background

### A. Turner's Criminal History

According to Respondent, the Director has lawful and valid custody of Turner pursuant to a judgment and sentence of the 33rd Judicial District Court of San Saba County, Texas, in cause number 5408, styled *The State of Texas v. Leslie Ray Turner*. On October 20, 2004, a jury found Turner guilty of capital murder. As the State was not seeking the death penalty, Turner was sentenced by the trial court to an automatic life sentence.

Turner's conviction was affirmed on August 11, 2006. *Turner v. State*, No. 03-05-00416-CR, 2006 WL 2309774 (Tex. App. – Austin 2006, pet. ref'd). His petition for discretionary review was refused on February 7, 2007. Turner also challenged his conviction in a state application for habeas corpus relief which he filed on May 2, 2008. *Ex parte Turner*, Appl. No. 70,260-02. The Texas Court of Criminal Appeals denied the application without written order on October 22, 2008.

### B. Factual Background

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Turner was indicted for the murder of Rhonda Jo Ward, who was found dead in her burning mobile home. According to trial testimony, the fire was discovered between approximately 7 and 8 a.m. on the morning of June 17, 2002. Passing motorists Michael and Sheridan Cradduck noticed smoke coming out of the roof and windows of the mobile home. They stopped, and Michael Cradduck exited their vehicle and tried to enter the home through the front door to ascertain if anyone was inside and needed help. Michael testified that the front door was unlocked and he

was able to open it, but was turned back by the smoke and heat. Michael then tried the back door, which was also unlocked, and testified that he was able to go inside "four or five steps" before the smoke and heat forced him back out.

Several residents of the street where Ward lived gathered near her burning trailer and observed the fire. Cindy Bradley testified that she observed Michael Cradduck try to get in through the front door. When he was turned back, Bradley followed him around to the back door. She concurred with Michael's testimony that the back door was not locked.

Henryetta Long recounted that she was standing next to Turner and Turner's grandmother, Ireta, while they observed the fire burning. Long testified that she heard Turner say that "somebody had tried to burn her [Ward], somebody had tried to strangle her and tried to burn her house." When Long was later interviewed by Texas Ranger Joey Gordon, she told Gordon that Turner had told her "that the lady had been strangled and raped." Long also testified to telling Gordon that she had seen an unidentified "Spanish kid" running from the property.

Henryetta Long's daughter, Mitzi, recounted that Turner came over to their residence and asked Mitzi what was being reported on their police scanner to "see if we knew what was going on." Mitzi testified that she saw Turner twice that morning; the second time, he had changed his clothes and "apparently had bathed or cleaned up ." Mitzi also testified to an incident in which Turner had claimed that if he ever caught his wife cheating on him, "he would put one bullet between the both of them and say that he thought he was raping her and that he was just trying to protect her."

Cody Sanderson, a fireman who also served as the department's chaplain, responded to the fire. He and another fireman entered the burning trailer through the back door and began searching the back end of the trailer for anyone inside. Sanderson recounted that most of the flames were in the front of the trailer. As the fire was brought under control, Sanderson was told that a body had been found in the bedroom, which was located at the front of the trailer adjacent to the front door. Sanderson entered the bedroom, discovered the body, and described it for the jury:

> The body was laying on the bed on-she was on her belly, back was in the bed; in other words, her feet were up at the head part, her head was at the other end. She was totally nude, and her head was wrapped up with the covers . . . . Right in the small of her back, there was a place about this big around that was burnt through to her backbone.

Sanderson opined that the appearance and condition of the body "indicated that there was some type of foul play involved," and that the burns on Ward's back indicated "that there was something put on her, some type of accelerant or something, and set on fire at that time."

The body was later identified as that of Rhonda Jo Ward, the occupant of the trailer. Dr. Randall Frost, the deputy chief medical examiner with the Bexar County

Medical Examiner's Office, performed an autopsy. He testified that he found fractures to the neck and an absence of soot in the respiratory tract that were consistent with a strangulation death. Frost also examined Ward's genitalia and observed redness on the back area of the vagina that appeared to "represent some kind of trauma to that area" that was consistent with penetration. On cross-examination, Frost admitted that the trauma could be indicative of either sexual assault or consensual sex, but emphasized on redirect that there was no evidence of trauma in approximately 80 percent of the sexual assault cases he has examined.

Chief of Police Ray Riggs investigated the scene in the aftermath of the fire. Riggs testified that two gasoline cans were found behind the trailer and that one of the cans was not sitting upright. Riggs further testified that the dead bolt of the front door had been forced open. Janine Mather, an official with the State Fire Marshal's Office, testified that the fire was determined to be the result of arson. Mather also testified that, in her opinion, the fire was started "to conceal the crime of homicide." Riggs called in Texas Ranger Joey Gordon to assist with the investigation.

Gordon testified that he first interviewed Henryetta Long to find out information about the male that she had seen running from the property. Gordon investigated and determined who this individual was, but did not find anything that would lead him to suspect that this person was involved in the crime. Gordon went back to Long to see if she had any additional information. Long told Gordon about Turner's statements that Ward had been strangled and raped. This information "perked" Gordon's interest, because "at the point that she said she heard this, no one should have known this because we didn't know. Law enforcement didn't know it; the fire department didn't know it . . . . So at the time Henryetta says that Leslie Turner told her that, no one should have known anything about a strangulation or a murder or anything about any kind of rape or sexual activity of any kind."

As the investigation continued, at Gordon's direction, Riggs requested and obtained a DNA saliva sample from Turner. Gordon also decided to interview Turner. Gordon testified that Turner told him that he knew Ward was having a relationship with a man named Scotty Peel. Gordon investigated this, but could find no evidence to corroborate what Turner had told him and that there was nothing connecting Peel to Ward. Gordon recounted that he began to believe that Turner was lying to him.

Cassie Carrading, supervisor for the DNA lab at the Austin Police Department, tested DNA obtained at the crime scene. Carrading examined the bedding from the mattress on which Ward was found and "found some stains that had the appearance of semen." Carrading tested the bedding to confirm the presence of semen, and the testing revealed a DNA profile that matched that of Leslie Turner and that did not match that of any other suspect in the case. Carrading also tested a nightgown that was found near Ward's body. Carrading testified that there were four semen stains on the nightgown, and that testing again revealed a DNA profile consistent with that of Leslie Turner. Carrading further testified that Turner's DNA was found on one of the gasoline cans. On cross-examination, Carrading admitted that DNA from an unknown person was found underneath one of Ward's fingernails. Carrading explained on redirect that this was not unusual because "your hands come

in contact with so many different things."

Turner's wife Lydia testified that Turner spent the entire night before the fire in bed with her. Turner also testified, explaining the presence of his DNA around Ward as the product of a surreptitious sexual affair between the two that he revealed for the first time when on the stand. He stated that he knew Ward and had done yard work for her, and had developed a sexual relationship with her. Turner was 31; Ward was 54. When asked if Ward had a problem with the age difference, Turner replied, "No. It wasn't-it wasn't a love relationship or nothing like that. It was strictly on sex." Turner testified that the last time they had sex was the day before the fire. Turner explained:

> I was at home cooking. Lydia and them was at work. Kids were all-I was at home getting the barbecue ready to barbecue, and she [Ward] drove by, honked her horn and asked me if I wanted to come down. Well, I was going to let the coals turn into coals, so I got in her vehicle and rode down to her house.

Turner went on to testify that once they arrived at Ward's house they "performed oral sex on each other." When asked why he had not informed Ranger Gordon of his sexual relationship with Ward, Turner replied, "Because this is San Saba. You don't say nothing like that to nobody." Turner also denied making statements regarding how Ward died to Henryetta Long, claiming Long was lying. Turner said, "I'm guilty of having sex with her, and I'm guilty of lying to Joey [Gordon] about having sex with her," but he denied killing her.

Evidently rejecting Turner's explanation, the jury convicted him of murdering Ward during the course of committing or attempting to commit aggravated sexual assault or burglary of a habitation. The district court assessed punishment at life imprisonment.

*Turner v. State*, No. 03-05-00416-CR, 2006 WL 2309774 at *1-3.

**C.      Turner's Grounds for Relief**

Turner raises the several grounds for relief: (1) The evidence was insufficient to support the conviction for capital murder; (2) The trial court erred when it failed to conduct a hearing to determine if the retired visiting judge could preside due to his failure to take a recent oath of office; (3) The prosecutor suppressed exculpatory evidence; (4) Trial counsel was ineffective.

**D.      Exhaustion of State Court Remedies**

Respondent contends the state court remedies have not been exhausted with respect to some of the claims of ineffective assistance of counsel because the right hand side of a page in Petitioner's state application for habeas corpus relief was cut off, leaving the Texas Court of Criminal Appeals to guess the missing words in the sentences. Because the Court is not provided with the original state application for habeas corpus relief, the Court is unable to determine whether Petitioner's original application was deficient. Accordingly, the Court will address the merits of Petitioner's claims as if state court remedies had been exhausted.

## Analysis and Discussion

**A.  The Antiterrorism and Effective Death Penalty Act of 1996 and its Application to Turner**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"]. Pub. L. No. 104-132, 110 Stat. 1214 (1996). AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under AEDPA's new standard, this Court cannot grant Turner federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).

The first requirement, regarding clearly established federal law "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529

U.S. 362, 412 (2000)). Determining whether the decision was based on an "unreasonable determination of the facts" thus constrains this Court in its review due to the deference it must accord the state court. *See id.* Therefore, unless there is an unreasonable factual determination by the state court in light of the record, the Court will give deference to the state court's fact findings. *See* 28 U.S.C. § 2254(d)(2).

The Fifth Circuit has held, because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when state habeas relief is denied without an opinion, as in this case. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). It is under this standard that the Court turns to the issues raised by Turner.

**B.      Sufficiency of the Evidence**

Federal habeas review of a claim based on the sufficiency of the evidence is extremely limited. The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

Federal courts are bound by state statutes and case law in determining the elements of an offense for purposes of evaluating the sufficiency of the evidence in a habeas case. *Foy v. Donnelly*,

959 F.2d 1307, 1313 (5th Cir. 1992). Turner was charged with capital murder. Under Texas law, a person commits capital murder if he intentionally or knowingly causes the death of an individual in the course of certain other offenses, in this case in the course of committing or attempting to commit aggravated sexual assault or burglary of a habitation. TEX. PENAL CODE ANN. §§ 19.02(b)(1) & 19.03(a)(2) (West 2002). In reviewing Turner's conviction, the appellate court noted Turner's DNA was found in the same bed where Ward's body was found, as well as on a gas container found at the scene. *Turner v. State*, No. 03-05-00416-CR, 2006 WL 2309774 at *4. Investigators concluded the fire was set by arson, with the use of an accelerant, and Ward's body was partly burned as if to cover up the crime. *Id.* Furthermore, Henryetta Long testified Turner claimed to know Ward had been strangled. *Id.* Viewing this evidence in the light most favorable to the verdict, the appellate court held a rational trier of fact could have found beyond a reasonable doubt that Turner caused Ward's death. *Id.*

The appellate court also considered Turner's insufficiency of the evidence claim with respect to the aggravated sexual assault. *Id.* at 5. Under Texas law, a person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means without that person's consent and if the person causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode or uses or exhibits a deadly weapon in the course of the same criminal episode. TEX. PEN. CODE ANN. § 22.021(a)(1)(A)(I), (2)(A)(I).

The appellate court noted Dr. Frost testified that there was redness on the back area of Ward's vagina that appeared to "represent some kind of trauma to that area." *Turner v. State*, No. 03-05-00416-CR, 2006 WL 2309774 at *5. While Frost did acknowledge this evidence might be consistent with either consensual or non-consensual sex, the court concluded a rational jury could

infer from all the evidence presented the sex was not consensual. *Id.* Additionally, the court noted the only evidence of consensual sex between Turner and Ward was Turner's own claim, first disclosed at trial, that he had an affair with Ward. *Id.* As explained by the appellate court, the jury could have chosen to not believe Turner's testimony, especially in light of the fact no other witness testified Turner had a sexual or even a social relationship with Ward. *Id.* Viewing the evidence in the light most favorable to the verdict, the appellate court concluded a rational trier of fact could have found beyond a reasonable doubt that Turner committed aggravated sexual assault. *Id.* at 6.

Finally, the appellate court considered Turner's sufficiency of the evidence claim with regard to the burglary. *Id.* Under Texas law, a person commits the offense of burglary if the person, without the effective consent of the owner, enters a building or habitation and commits or attempts to commit a felony, theft, or an assault. TEX. PEN. CODE ANN. § 30.02(a)(3) (West 2002). The appellate court noted Ward's daughter testified most of the time her mother kept her house locked. *Id.* Janine Mather of the State Fire Marshal's Office examined the front door and testified "examination of the door frame revealed that the door bolt had been broken inward prior to this fire event." *Id.* Chief of Police Riggs testified he examined the door as part of his own investigation, and he also concluded that the deadbolt of the front door had been forced open. *Id.* Viewing the evidence in the light most favorable to the verdict, the appellate court concluded a rational trier of fact could have found beyond a reasonable doubt Turner committed the offense of burglary. *Id.*

This Court agrees with the magistrate judge and finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Turner's claim does not warrant federal habeas relief.

**C.      Trial Court Error and the Oath of Office**

Turner claims the trial court erred when it failed to conduct a hearing to determine if the retired visiting judge had jurisdiction and authority to preside over the case due to his failure to take a recent oath of office. This claim fails for several reasons.

First, Turner's claim arises solely under state constitutional law and thus is not cognizable on federal habeas review. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Ramos v. Dretke*, No. Civ.A.4:04CV459-A, 2005 WL 39144 at *3 (N.D. Tex. Jan. 6, 2005), rec. adopted, 2005 WL 233952 (N.D. Tex. Jan. 31, 2005) (alleged failure of trial judge to take oath of office required by Texas Constitution and state law did not merit federal habeas relief). Second, "a lack of filing of any required oath is not proof, in itself, of the failure of the judge to take the constitutionally required oaths." *Murphy v. State*, 95 S.W.3d 317, 320 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd).

Finally, Turner's own attachments to his habeas application indicate Judge Shaver was properly assigned to Turner's trial and the judge did in fact sign and file an oath of office. Pet. Ex. A and Ex. B. The fact these oaths were signed in 2000 does not constitute a procedural defect warranting a void judgment. *Davis v. State*, 956 S.W.2d 555, 560 (Tex. Crim. App. 1997). Thus, Turner has failed to show he is entitled to relief on this basis.

**D.     Prosecutorial Misconduct**

Turner next claims the State suppressed the original location of the nightgown and the person who discovered it; the black panties, the photographs of the same and the DNA test performed on the same; the black robe, the photographs of the same, the DNA test performed on the same, the location and time the panties were panties were found, and the person who found it; and the footprint cast molds taken by the crime lab team.

A failure to disclose evidence claim is governed by *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a Brady violation, Turner must prove the following: (1) the prosecutor suppressed or withheld evidence, (2) which was favorable, and (3) material to the defense. *Id.* at 87. However, the Fifth Circuit has held a habeas petitioner is not entitled to relief based on conclusory and speculative allegations of a *Brady* violation. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). Turner has not offered any support for his conclusory claim. He makes no assertion the evidence was favorable or had any impact whatsoever on the result of his trial. This Court agrees with the magistrate judge and finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Turner's claim on this point does not warrant federal habeas relief.

**E.     Ineffective Assistance of Counsel**

Turner finally claims he received ineffective assistance of counsel at trial. To establish ineffective assistance of counsel, Turner must allege and prove his counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish the "deficient performance" prong, Turner must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel'" the Sixth Amendment guarantees, and thus his counsel's representation fell below an objective standard of reasonableness. *Id.* The attorney's conduct is reviewed with great deference, and there is a strong presumption counsel has exercised reasonable professional judgment. *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986).

To establish the "prejudice" prong, Turner must establish a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A 'reasonable probability' is one sufficient to undermine confidence in the outcome of the proceeding." *Nixon v. Epps*, 405 F.3d 318, 324 (5th Cir. 2005) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)). The Fifth Circuit has held "a failure to establish *either* requirement [of the *Strickland* test] necessarily defeats the claim" of ineffective assistance of counsel. *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir. 1992) (emphasis added).

The Fifth Circuit has repeatedly admonished that attorneys should not be subjected to unrealistic standards. *United States v. Faubion*, 19 F.3d 226 (5th Cir.1994). "Judicial scrutiny of counsel's performance must be 'highly deferential,' and the court must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (citations omitted). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* For instance, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999).

**Turner's Arguments Regarding Counsel's Failure to Object**

Turner claims counsel failed to object to (1) the trial judge's failure to take an oath of office; (2) introduction of autopsy photographs; and (3) the prosecutor's references to God and divine retribution in his closing arguments. As discussed above, Turner's own proof showed the judge had signed an oath of office. Thus, counsel was not deficient for failing to object.

**Autopsy Photographs**

Turner argues counsel failed to make timely objections to the introduction of irrelevant and prejudicial autopsy photographs. The Court agrees with the magistrate judge's assessment. The photos were admissible as direct evidence to prove the State's case. *See Williams v. State*, 176 S.W.3d 476, 481-82 (Tex. App. – Houston [1st Dist.] 2004) (autopsy photos admissible to show injuries to the body caused by the defendant). Thus, counsel was not deficient for failing to object.

Turner also claims the prosecution conspired with the victim's family to cause an emotional outburst in from of the jury when the photographs were shown. Turner argues his counsel should have objected on these grounds. As the magistrate judge indicated, the record does not show any prosecutorial misconduct. Furthermore, Turner's counsel did request a mistrial on this basis and later, a new trial, but the trial court rejected both attempts. Thus, Turner's counsel was not deficient since he did object, but his requests were unsuccessful.

**References to God in Closing Arguments**

Turner claims counsel should have objected to the prosecutor's closing statement when she stated, "[t]he biggest hero is [the victim]. And her last earthly act was literally her own body, preserving. It's as if God, with that DNA, pointed his finger down, this is the man." 4 SF 155. Later she also stated, "Rhonda Jo Ward, through her last earthly act, preserved the one sure thing that clicked the entire, entire justice of this case together. And it is as if the hand of God is pointing down and saying, ladies and gentlemen, this is justice, this is him." 4 SF 160.

Under Texas law, "proper jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement." *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). Under this standard, the prosecutor's references to God were clearly

improper. However, Turner has not shown but for counsel's failure to object, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There was significant evidence of Turner's guilt and Turner does not assert the results of the trial would have been different had his counsel objected. The prosecutor's invocation of God in closing arguments, while inappropriate, does not raise a reasonable probability the results of the trial would have changed.

### Turner's Arguments Regarding Counsel's Failures to Subpoena, Interview, Investigate, and Hire

Turner's remaining claims all involve counsel's failure to subpoena and interview other witnesses, investigate the DNA testing reliability, and hire experts to refute the State's evidence. If an attorney fails to investigate the case against the defendant and to interview witnesses, there may be a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1435 (5th Cir. 1994). However, in order to establish counsel was ineffective by virtue of failure to investigate the case, a convicted defendant must do more than merely allege a failure to investigate. Rather, Turner must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how the outcome of the case would have been altered. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("Without a specific affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards.'") (citing *United States ex rel. Partee v. Lane*, 926 F.3d 694, 701 (7th Cir. 1991)); *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) ("A prisoner's bald conclusory assertion that supposed . . . witnesses were not called does not overcome the strong presumption that his counsel's actions were reasonable.") (internal citations omitted).

As the magistrate judge explained, Turner does not offer any specific facts supporting his contention his counsel failed to investigate the case, nor that any further investigation would have changed the outcome. Accordingly, he has not met the *Strickland* standard for establishing ineffective assistance of counsel.

**Conclusion**

In accordance with the foregoing:

IT IS ORDERED that the Report and Recommendation of the Magistrate Judge [#12] is ACCEPTED.

IT IS FURTHER ORDERED that Petitioner Leslie Ray Turner's Application for Habeas Corpus under 28 U.S.C. § 2254 [#1] is DENIED.

SIGNED this the 13th day of November 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE